UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERESA JACOBSON,<br><br>      Plaintiff,<br>  v.<br><br>BNSF RAILWAY COMPANY, et al.,<br><br>      Defendants. | CASE NO. C18-1722JLR<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE AS MOOT |

## I. INTRODUCTION

Before the court are Defendant BNSF Railway Company's ("BNSF") motion to exclude the testimony of Plaintiff's expert witness Dr. Ernest P. Chiodo (MTE (Dkt. # 36); *see also* Am. MTE Reply (Dkt. # 49)) and motion for summary judgment (MSJ (Dkt. # 38); *see also* MSJ Reply (Dkt. # 47)). Plaintiff Teresa Jacobson, as the personal representative of the estate of James P. Jacobson, opposes both motions. (Am. MTE Resp. (Dkt. # 49) & MSJ Resp. (Dkt. # 44).) The court has considered BNSF's motions,

ORDER - 1

all submissions filed in support of and in opposition to the motions, the relevant portions of the record, and the applicable law.[1] Being fully advised, the court GRANTS BNSF's motion for summary judgment and DENIES BNSF's motion to exclude as moot.

## II. BACKGROUND

Ms. Jacobson brought this lawsuit on behalf of the estate of her late husband, James Jacobson, a long-time railroad worker who died of kidney cancer in 2015. (*See generally* Compl. (Dkt. # 1).) Ms. Jacobson alleges that Mr. Jacobson's cancer was caused by BNSF's negligent use of known cancer-causing materials in its railroad operation. (*See id.*) The court reviews the factual and procedural background of this case below.

**A.     Factual Background**

Mr. Jacobson worked as a track laborer, machine operator, and foreman for former Defendant[2] Soo Line Railroad d/b/a Canadian Pacific Railroad Company ("Soo Line") from 1963 to 1976 and for BNSF from 1980 to 2015. (Compl. ¶¶ 8-9.) During his career, he was assigned to operate various diesel-powered equipment including cranes, piledrivers, brush cutters, and pipe borers. (*Id.* ¶ 11.) Ms. Jacobson alleges that Mr. Jacobson was exposed to various toxic substances and carcinogens, including, but not limited to, diesel fuel, fumes, and exhaust; benzene; creosote; herbicides; and rock,

---

[1] Neither party requests oral argument or a formal *Daubert* hearing (*see* MTE, MSJ, Am. MTE Resp., MSJ Resp.), and the court finds oral argument unnecessary to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] In March 2019, the parties stipulated to the dismissal with prejudice of Ms. Jacobson's claim against Soo Line. (3/18/2019 Ord. (Dkt. # 17).)

asbestos, and sand dust and fibers. (*Id.* ¶ 12.) Ms. Jacobson alleges that Mr. Jacobson's exposure to these substances during his employment caused or contributed to Mr. Jacobson's development of kidney cancer. (*Id.* ¶ 14.) Mr. Jacobson died due to complications of his cancer on December 2, 2015. (*See id.* ¶ 3.)

**B.     Procedural Background**

Ms. Jacobson filed her complaint in this action on November 30, 2018. (*See generally id.*) She alleges that BNSF is liable under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, for negligently exposing Mr. Jacobson to known carcinogens during his employment. (*Id.*)

On January 2, 2020, Ms. Jacobson disclosed as her sole expert Dr. Ernest P. Chiodo. (Chait Decl. (Dkt. # 37) ¶ 2, Ex. A.) She disclosed that Dr. Chiodo would serve as both her medical expert and her liability expert, and that he would testify as to "the nature and extent of [Mr. Jacobson's] injuries as well as their causation (general/specific)"; "the presence of known toxins on the railroad and the railroad's knowledge concerning these carcinogens"; and "the railroad's general failure to provide [Mr. Jacobson] with a safe place in which to work." (*Id.* at 1.)

Dr. Chiodo's qualifications as an expert include:

> a Medical Degree (M.D.) from Wayne State University School of Medicine, a Master of Public Health (M.P.H.) from Harvard University School of Public Health, a Master of Science in Biomedical Engineering from Wayne State University, a Master of Science in Threat Response Management (biological, chemical, and radiological defense) from the University of Chicago, a Master of Science in Occupational and Environmental Health Sciences with Specialization in Industrial Toxicology from Wayne State University, and a Master of Science in Evidence Base Health Care (evidence based medicine) from the University of Oxford in the United Kingdom.

(Chait Decl. ¶ 3, Ex. B ("Chiodo Rep.") at 1.) Dr. Chiodo is a certified industrial hygienist and is board-certified in the medical specialties of internal medicine; occupational medicine; and public health and general preventative medicine. (*Id.* at 1-2.) He is also a licensed attorney in the states of Michigan and Illinois. (*See id.* at 9-38 ("Chiodo CV").)

Dr. Chiodo issued his report on December 28, 2019. (*See id.* at 1.) Dr. Chiodo reviewed Mr. Jacobson's death certificate, medical bills, and medical records, in addition to Ms. Jacobson's complaint, her answers to BNSF's discovery requests, and transcripts of the depositions of Ms. Jacobson, Mike Halford, and Wilford Hink.[3] (*Id.* at 2-3.) From Mr. Halford's deposition, Dr. Chiodo learned that Mr. Jacobson was exposed to diesel exhaust from diesel-powered equipment and to asbestos from braking trains. (*Id.* at 3.) From Mr. Hink's deposition, Dr. Chiodo learned that Mr. Jacobson was exposed to diesel exhaust from equipment including a "Fairmont tamper and a Ballast Regulator." (*Id.*) Dr. Chiodo spoke with Ms. Jacobson, who informed him that Mr. Jacobson would have a strong smell of diesel exhaust on his body and clothing when he returned home from work. (*Id.*) Dr. Chiodo cited scientific literature, including peer-reviewed studies, for the principles that railroad work is "well known as an occupation with significant diesel exhaust and fuel exposure" (*id.* at 3-4); "[a]sbestos exposure is well known to occur with railroad work" (*id.* at 4-5); "[o]ccupational exposure to diesel exhaust is known to cause

---

[3] The parties have not stated the capacities in which Mr. Halford and Mr. Hink testified.

1  kidney cancer" (*id.* at 5-6); and "[a]sbestos exposure is known to cause kidney cancer"

2  (*id.* at 6-7).

3        Based on his review of the records and the literature he cited in his report, Dr.

4  Chiodo opined "to a reasonable degree of medical and scientific certainty that the

5  exposures experienced by [Mr. Jacobson] during the course of his railroad employment

6  were a significant contributing factor in his development of renal cancer." (*Id.* at 7.) He

7  noted that Mr. Jacobson "clearly had long and intense exposure to diesel exhaust" during

8  his employment, and that "[e]xposure to diesel exhaust is a known risk factor for the

9  development of renal cancer." (*Id.*) He further noted that Mr. Jacobson was exposed to

10 asbestos, another known cause of kidney cancer, during his employment. (*Id.*) He wrote

11 that "the differential diagnosis of etiology for the renal cell cancer in [Mr. Jacobson]

12 include[s] this railroad work due to exposure to diesel exhaust and asbestos as well as his

13 history of cigarette smoking." (*Id.*) His report does not include an opinion regarding

14 BNSF's knowledge of the presence of toxic chemicals, nor does it include an opinion

15 regarding BNSF's failure to provide Mr. Jacobson with a reasonably safe place to work.

16 (*See generally* Chiodo Rep.)

17                        **III.   DISCUSSION**

18       BNSF argues that it is entitled to summary judgment because Dr. Chiodo's expert

19 opinion regarding medical causation does not meet the standards for admissibility of

20 expert testimony set forth in the Federal Rules of Evidence and *Daubert v. Merrill Dow*

21 *Co.*, 509 U.S. 579 (1993). (*See generally* MSJ, MTE.) It further argues that even if the

22 court deems Dr. Chiodo's opinions regarding medical causation admissible, summary

1  judgment is nevertheless appropriate because Ms. Jacobson disclosed no expert testimony
2  or other evidence that would support a finding that BNSF breached a duty to Mr.
3  Jacobson.  (*See* MSJ at 6-8; MSJ Reply at 3-5.)

4  Ms. Jacobson opposes BNSF's motions.  (*See generally* MSJ Resp.; Am. MTE
5  Resp.)  Although she concedes that summary judgment is appropriate if the court
6  excludes Dr. Chiodo's expert opinion regarding medical causation (*see* MSJ Resp. at 13),
7  she argues that the motion for summary judgment should be denied if the court denies
8  BNSF's motion to exclude (*see id.* at 13-22).[4]

9  As set forth in more detail below, the court grants BNSF's motion for summary
10 judgment because BNSF has met its burden to demonstrate that Ms. Jacobson lacks
11 evidence of an essential element of her FELA claim.  Because the court grants BNSF's
12 motion for summary judgment on this ground, the court need not reach the admissibility
13 of Dr. Chiodo's medical causation testimony and therefore denies BNSF's motion to
14 exclude as moot.

15 **B.  Motion for Summary Judgment Standard**

16 Summary judgment is appropriate if the evidence viewed in the light most
17 favorable to the non-moving party shows "that there is no genuine dispute as to any
18 material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
19 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*,
20

---

21 [4] BNSF moves to strike nearly all of Ms. Jacobson's response to its motion for summary
22 judgment for failure to provide citations to portions of the record that support her factual
   assertions.  (MSJ Reply at 5-6.)  The court denies BNSF's motion to strike.

816 F.3d 1170, 1177 (9th Cir. 2016). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

**B.     FELA Standard**

Under the FELA, railroads are answerable in damages for an employee's "injury or death resulting in whole or in part from [the carrier's] negligence." 45 U.S.C. § 51. The plaintiff bears the burden of proving the standard elements of negligence—the existence of a duty owed by the defendant, a breach of that duty, causation, and damage. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 538 (1994). The railroad's duty of care is measured by what would have been reasonably foreseeable to a carrier in similar

circumstances. *CSX Transp. Inc. v. McBride*, 564 U.S. 685, 703 (2011). The negligence inquiry focuses on what the carrier may have known about the risks, when the carrier knew that information, and what action or inaction would have been reasonable in light of those circumstances. *See Tressler v. BNSF Ry. Co.*, No. CV-10-188-RMP, 2012 WL 315402, at *5 (E.D. Wash. Feb. 1, 2012) (citing *CSX Transp.*, 564 U.S. at 703). With respect to causation, the plaintiff's burden in a FELA case is only to prove that the railroad's negligence "played a part—no matter how small—in bringing about the injury." *CSX Transp. Inc.*, 564 U.S. at 705. This is a relaxed standard: the plaintiff need not prove that the railroad's negligence proximately caused the employee's injury or death. *See id.* at 688.

**C.     BNSF's Motion for Summary Judgment**

BNSF argues that summary judgment is appropriate because Ms. Jacobson lacks evidence supporting the negligence and causation elements of her FELA claim. Because the court agrees that Ms. Jacobson has not met her burden to establish a genuine issue of material fact regarding BNSF's negligence, the court grants BNSF's motion for summary judgment.

Ms. Jacobson named Dr. Chiodo as her expert to opine not only about whether Mr. Jacobson's exposure to diesel exhaust and asbestos caused his cancer but also about whether BNSF negligently breached its duty of care to Mr. Jacobson by failing to provide him a reasonably safe workplace. (*See* Chait Decl. Ex. A at 1.) BNSF contends—and Ms. Jacobson does not dispute—that proof that a carrier was negligent in the context of a FELA claim arising from exposure to toxic chemicals requires expert testimony from an

1  industrial hygienist.  (MSJ at 7-8; MSJ Resp. 18-19.)  BNSF argues that the court should

2  exclude any expert testimony by Dr. Chiodo regarding BNSF's negligence because his

3  expert report does not contain any opinions regarding the level of Mr. Jacobson's

4  exposure to toxic chemicals or whether his exposure to those chemicals was above

5  acceptable levels.  (MSJ at 7-8 (citing Fed. R. Civ. P. 26(a)(2)(B)(i)); *see also* MTE at

6  9-10.)  BNSF asserts that Ms. Jacobson cannot meet her burden on summary judgment

7  because she cannot offer proof that BNSF breached its duty of care to Mr. Jacobson in

8  the absence of expert testimony from an industrial hygienist.  (MSJ at 7-8.)

9       Ms. Jacobson responds that Dr. Chiodo is qualified to offer an industrial hygiene

10  opinion—even though BNSF does not question Dr. Chiodo's qualifications.  (*See* MSJ

11  Resp. at 19-20; *see* MSJ at 7 (acknowledging that Dr. Chiodo has the necessary

12  certifications to give such an opinion).)  Rather than demonstrating to the court that there

13  are genuine issues of material fact regarding whether BNSF breached its duty to provide

14  Mr. Jacobson a reasonably safe workplace, however, Ms. Jacobson focuses her

15  arguments exclusively on Dr. Chiodo's ability to testify about the *causation* element of

16  her FELA claim.  (*See* MSJ Resp. at 13 (pointing out that Dr. Chiodo's testimony "will

17  center on issues of general causation and specific causation"); 18-19 (arguing that Dr.

18  Chiodo need not opine that Mr. Jacobson's cancer was proximately caused by his

19  exposure to diesel exhaust or asbestos); 20-22 (discussing Dr. Chiodo's methodology in

20  formulating his opinions regarding general and specific causation).)  She does not address

21  BNSF's Rule 26(a)(2) argument; identify any testimony by Dr. Chiodo that would

22  support the negligence element of her claim; or point the court to any other evidence

supporting her allegation that BNSF negligently exposed Mr. Jacobson to the diesel exhaust or asbestos that she alleges caused Mr. Jacobson's cancer.  (*See generally* MSJ Resp.)

Federal Rule of Civil Procedure 26(a)(2) requires retained experts to provide an expert report which gives "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  If a party fails to provide information required under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here, although Ms. Jacobson disclosed Dr. Chiodo as an expert regarding "the presence of known toxins on [BNSF's] railroad", "[BNSF's] knowledge concerning these carcinogens" and "[BNSF's] general failure to provide [Mr. Jacobson] with a safe place in which to work" (Chait Decl. Ex. A at 1), Dr. Chiodo's expert report says nothing about BNSF's knowledge of toxic chemicals in Mr. Jacobson's workplace or whether its actions were reasonable in light of that knowledge (*see generally* Chiodo Rep.).  Because Dr. Chiodo's expert report contains no mention of his opinions on these topics as required by Rule 26(a)(2)(B)(i), the court agrees with BNSF that Dr. Chiodo may not testify about whether BNSF negligently breached its duty of care to Mr. Jacobson by failing to provide him a reasonably safe workplace.

Ms. Jacobson has identified no other evidence that would demonstrate a genuine issue of material fact regarding BNSF's failure to provide Mr. Jacobson with a reasonably safe workplace as required to prove her FELA claim.  Accordingly, the court

GRANTS BNSF's motion for summary judgment. Because the court grants BNSF's motion for summary judgment based on Ms. Jacobson's failure to meet her burden to identify specific facts from which a factfinder could reasonably find in her favor on her FELA claim, *see Celotex*, 477 U.S. at 324, the court need not, and does not, reach BNSF's motion to exclude Dr. Chiodo's expert testimony regarding medical causation and DENIES that motion as moot.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS BNSF's motion for summary judgment (Dkt. # 38) and DENIES BNSF's motion to exclude (Dkt. # 36) as moot.

Dated this 22nd day of January, 2021.

JAMES L. ROBART
United States District Judge